# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 05-10022-02** |
| **VERSUS** | * | **JUDGE DRELL** |
| **MICHAEL JOHN KELLER** | * | **MAGISTRATE JUDGE KIRK** |

## REASONS FOR RULING

A hearing on the government's motion to detain the defendant, Michael John Keller (Keller), was held on November 2, 2005. At the conclusion of the hearing, the undersigned entered an order releasing the defendant on specific conditions. The government moved for a stay to allow an appeal to the District Judge.[1] The undersigned granted the government's request for a stay, staying the release Order until noon on Monday, November 7, 2005. In addition to the reasons orally assigned at the hearing, these constitute my reasons for denying the government's motion for detention.

## BAIL REFORM ACT OF 1984

The Bail Reform Act of 1984 ("Act"), 18 U.S.C. 3142, establishes the procedure for pre-trial release and detention. The Act directs the judicial officer to order pre-trial release on personal recognizance or on the execution of an unsecured appearance bond **unless** the judicial officer determines that release will not reasonably assure the appearance of the defendant or will endanger the safety of the community. 18 U.S.C. 3142 (b). The Act clearly favors non-detention. *United States v. Byrd,* 969 F.2d 106, 109 (5th Cir. 1992) (there can be no doubt that this Act

---

[1]Technically, the government is authorized to seek a "revocation" of the release order from the District Judge. See 18 USC 3145 (a) (1). If the release order is not revoked by the District Judge, the government is then allowed to appeal to the Fifth Circuit Court of Appeals.

clearly favors non-detention). If the judicial officer believes that a personal recognizance release is insufficient, the judicial officer is directed to consider a number of conditions which may be ordered so as to further assure the defendant's appearance at trial and the safety of the community. 18 U.S.C. 3142 (c). Detention may be ordered only after a hearing pursuant to 18 U.S.C. 3142 (f), if the judicial officer finds that **no condition or combination of conditions** will reasonably assure the appearance of the person and the safety of the community.

The judicial officer is required to conduct the hearing at the request of the government only when the case involves one of the six enumerated conditions set forth in the Act. In this case, the government moved for detention on the grounds that the defendant is charged with an offense for which the maximum term of imprisonment is ten years or more, as prescribed in the Controlled Substance Act (21 U.S.C. 801 *et. seq.*) See 18 USC 3142 (f) (1) (A). In order to detain the defendant, the judicial officer must find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community. 18 U.S.C. 3142 (f). Subject to rebuttal by the defendant, it is presumed that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community if the judicial officer finds that there is probable cause to believe that the defendant committed an offense for which the maximum possible penalty is ten years or more under the Controlled Substances Act or committed an offense under 18 USC 924 (c), as is alleged in Count 11 of the indictment herein.

The defendant challenging pre-trial detention, when the government relies on this presumption, must produce rebutting evidence at the detention hearing. However, the defendant **does not** bear the burden of persuasion. The burden of persuasion remains with the government.

*United States v. Hare,* 873 F.2d 796,798 (5th Cir. 1989) and *United States v. Bosquez- Villarreal,*

868 F.2d 1388,1389 (5th Cir. 1989). In considering whether the defendant is entitled to pretrial

release, the judicial officer must consider those factors set out in 18 U.S.C. 3142 (g).

**FINDINGS OF FACT**

The government called one witness at the hearing, Deputy Ray Ortiz (Ortiz), Vernon

Parish Sheriff's Office, who is assigned to narcotics investigations. The defendant called one

witness, the defendant's father, John Keller. Additionally, the defendant proffered the testimony

of the defendant's mother, Sue Hamilton Keller, pursuant to 18 USC 3142 (f), as being

substantially the same as her husband's testimony. Based on the testimony of the witnesses, the

proffer and the pretrial services report I find the following facts.[2]

Prior to April 24, 2005, Ortiz was investigating James Midkiff, one of Keller's co-

defendants, for possibly being involved in the manufacture of methamphetamine in Vernon

Parish. Midkiff had been arrested by the Rosepine Police Department in October 2004 for

methamphetamine possession and had been arrested by the Louisiana State Police in February

2005 for possession of methamphetamine. On both occasions, Midkiff was in possession of a

pistol. Louisiana Fish and Wildlife agents informed Ortiz that there was unusually heavy traffic

accessing a hunting lease, near a cemetery, in rural Vernon Parish. Ortiz's investigation

disclosed that trash had been scattered in the area; the trash was consistent with that often found

in connection with a methamphetamine lab. Accordingly, surveillance cameras were placed so as

to record activities in the area which the agents believed was being used for a methamphetamine

---

[2]Basically, these facts are undisputed, which given the nature and timing of a detention hearing is not unusual.

lab. These cameras were motion activated. On April 29, 2005 agents going to this location to check on the cameras and change film encountered Midkiff and Keller at this site. Anhydrous ammonia, a chemical used in the manufacture of methamphetamine, was found at the scene. Midkiff and Keller were arrested. A review of the tapes showed Keller on one or two occasions, once carrying a pill washer. Ortiz was not sure if Keller was also shown on the tape carrying denatured alcohol, which is used in the manufacture of methamphetamine. Although unknown to Ortiz, the hunting lease was owned by Keller's father.

The tape did not show Keller carrying a gun. In fact, no weapons at all were shown on the tape. Keller was not armed at the time of his arrest. A .22 caliber pistol belonging to Keller's father, who had received the gun from his father, was found in the truck which had been driven by Keller to the site. The truck also belonged to the defendant's father who routinely kept the pistol in the truck. Keller's father routinely kept a pistol in his other truck, also. A search warrant was obtained for Keller's residence. In executing the warrant, the agents found a pill washer under the sink (presumably the pill washer shown on the surveillance tape) and several pieces of aluminum foil which contained methamphetamine residue after smoking. No weapons were found at the defendant's residence.

The defendant was booked on April 29, 2005 with charges relating to the methamphetamine lab found on the hunting lease.[3] After the search warrant was executed, the defendant was additionally booked with possession of drug paraphernalia, to wit, the pill washer and aluminum foil. After the search warrant was executed, Keller was *Mirandized* and gave a

---

[3]Ortiz informed the court that he did not recall the charge exactly, but that the pre-trial services report was in error in identifying the charge as Distribution to Persons Under Age 18.

statement in which he said he was simply playing with the pill washer, admitted that the substance on the aluminum foil was methamphetamine, that he had tried unsuccessfully to cook methamphetamine and that he was a user of methamphetamine. Thereafter, Keller was bonded out of jail by his father, who after some delay due to a shortage of beds, got the defendant admitted for drug addiction into a treatment facility.

In July, 2005, in co-operation with the Natchitoches Parish Sheriff's Office and Wildlife and Fisheries agents, Vernon Parish Deputies surveilled a public campground in Kisatchie National Forest as a possible methamphetamine lab site. During this surveillance, two of Keller's co-defendants were overheard by agents talking about the campsite being used as a methamphetamine lab site. The agents then closed in and arrested several persons, including Keller. Ortiz, who was not present at the time, said that he was not sure where Keller was at the time of the raid. The agents found methamphetamine, methamphetamine lab components and some guns at the site. Ortiz was not specific about the locations of the guns, but Keller was not armed when arrested. Keller was booked into the Natchitoches Parish Prison; his father again bonded him out.

I found John Keller, the defendant's father, to he highly credible.[4] John Keller testified that after he bailed the defendant out of jail in Natchitoches, that he placed the defendant on "house arrest". The defendant again entered drug treatment, which he successfully completed, and was made to move into his parent's home so that they could watch him. John told the defendant that if he acted up, he, John, would pull the bonds and send the defendant back to jail.

---

[4]This finding is made after John Keller admitted a DUI arrest and an arrest for aggravated assault for threatening someone with a gun in 2004. Keller was not asked the disposition of those two charges.

John Keller testified that he owned the hunting lease where the first arrests were made, and that he had instructed his son to check on the lease occasionally to make sure that no one who was not authorized to be there was present. John Keller testified that his son had, on various occasions, told unauthorized persons to leave the lease.

John Keller testified that he and his son are automobile mechanics and that his son is very good at this job. John Keller has a mechanic's shop on his residential premises in which the defendant has, and can again, work. Since completing his drug treatment, John Keller characterized his son as being "back to Mike", by which he meant that his son was back to his "old self". Since his release from jail in Natchitoches Parish, the defendant has resided with his parents, except for a period of time when he worked with a family friend, who his parents trusted to watch him closely, doing well stripping work near the Texas-Oklahoma border.[5] John Keller testified that if his son, the defendant, was a problem that he would, "call Sam Craft (Sheriff of Vernon Parish) and have him picked up."

John Keller testified that his son was not violent and was no danger to anyone. Deputy Ortiz testified that he was familiar with the defendant's name because he had been arrested by the Sheriff's Office before, but that he, Ortiz, had no reason to believe that Keller was dangerous. Keller has no prior felony convictions.

At the time of his indictment herein, the defendant was free on bail from the state charges. When notified of this indictment, the defendant self-surrendered.

---

[5]John Keller said he was given no papers when he posted bond for his son, that they had just "taken the money" and turned his son loose.

# ANALYSIS OF FACTORS TO BE CONSIDERED IN SETTING CONDITIONS OF RELEASE

At the conclusion of the hearing, the undersigned reviewed the factors set out in section 3142 (g) in detail, and found, after a thorough review of the evidence presented at the hearing, that there were conditions of release which would reasonably assure the defendant's appearance and the safety of the community and that therefore the presumption in favor of detention had been successfully rebutted.

The Bail Reform Act sets forth certain factors to be considered in determining whether there are conditions of release which will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. 3142 (g). The pre-trial services officer concluded that the defendant did not pose a high risk of flight. I agree with that conclusion.

The defendant is a life-long resident of Vernon Parish, has worked steadily, has family including children whom he supports and owns property in the Parish. The defendant has never failed to appear, and was released on bond after his state arrests. It is true that the defendant apparently violated one of the conditions of his release from state custody by going to Texas to work, but there was no evidence adduced to show that the defendant or his family knew of the travel restriction imposed by operation of Louisiana law. I am led to the conclusion that this violation was unknowing. Most significantly, I was impressed by the very strong family ties between the defendant and his mother and father. The defendant's family has continued to try to help the defendant and, at least since his release in July from Natchitoches Parish Prison and his subsequent drug treatment, the defendant appears to be doing well. He now lives with his parents. Finally, the defendant self-surrendered when informed of these charges. All of these

factors, which are required to be considered by the court in deciding the government's motion for detention by 18 USC 3142 (g) (3), favor release and serve to effectively rebut the presumption of flight risk in this case.

The pretrial services officer recommended detention in this case because of the seriousness of the offense and the allegation in the indictment that the defendant possessed a gun in furtherance of a drug trafficking offense. The factors required to be considered under 18 USC 3142 (g) as they relate to "dangerousness" will be discussed individually.

**1. Nature and circumstances of the offense charged**

The nature of the offenses, participating in manufacturing methamphetamine and possessing a firearm in furtherance of a drug trafficking crime are clearly serious and dangerous offenses and favor detention. Indeed, that is why in cases like this one a presumption, albeit rebutable, exists in favor of detention.

The circumstances of this defendant's participation in the offenses must also be examined. Here, the evidence indicates that this defendant used methamphetamine and tried, at least on one occasion, to "cook" methamphetamine himself. The evidence does not indicate that this defendant was in charge of the operation or played a particularly significant role in the operation. Apparently Midkiff was the leader and the target of the government's investigation. The evidence indicated that with regard to the Kisatchie site, this defendant was present, but his exact location and activities are unknown to this court and to the government's case agent. The most significant evidence of the defendant's apparent participation in the Vernon Parish site is that the site was located on a hunting lease owned by the defendant's father which the defendant was to protect. The evidence of the defendant's participation in the alleged conspiracy does not

lead to the conclusion that the circumstances of the offense, as they relate to the defendant, are particularly dangerous. For example, there is no reason to believe that if the defendant were released that he would go out and create another methamphetamine lab. The same could not be said about Midkiff.

Obviously, the most troubling charge, as it relates to the dangerousness issue, is Count 11 which charges the defendant with possessing a gun in furtherance of a drug trafficking crime in violation of 18 USC 924(c) (1).

Section 924 (c) (1), as it currently reads, prohibits the possession of a firearm in furtherance of a drug trafficking crime.[6] In *United States v. Ceballos-Torres,* 218 F.3d. 409 (5th Cir. 2000), as amended on denial of rehearing and rehearing *en banc*, the court recognized that mere presence of a gun at the scene of a drug trafficking crime is not enough to prove a violation of the statute. Rather the possession of the gun must be "in furtherance" which the court defined as "the act of furthering, advancing or helping forward" the drug trafficking crime. *Id.* at 414. The court further identified the following as factors that would help determine whether a particular defendant's possession furthers, advances or helps forward a drug trafficking offense: (1) the type of drug activity being conducted, (2) the accessibility of the firearm, (3) the type of weapon, (4) whether the weapon is legally possessed, (5) whether the weapon is stolen, (6) whether the gun is loaded, (7) the proximity of the gun to the drugs or drug profits and (8) the time and circumstances under which the gun is found. *Id.* at 414-415.

In this case, the gun is a 9 shot .22 caliber H&R pistol. This is not the type of gun usually

---

[6]An earlier version of Section 924 criminalized the use and carrying of a firearm in furtherance of a drug trafficking crime, but not possession. Congress amended the Section after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

favored by drug offenders for protection or security because of its small caliber. The gun was not stolen; it belonged to the defendant's father and was apparently seized from his truck. The possession of the gun by the defendant was otherwise legal since the gun was in the truck and since the defendant has no felony record. It is unclear where the truck was parked at the time of the defendant's arrest at the deer lease, but there is no evidence that any drugs or drug profits were anywhere near the gun. Apparently the gun was loaded.

Whether the defendant is guilty of this offense or not is a question for the jury. However, for the purposes of this analysis, the government's evidence produced at this hearing supporting this count was far from overwhelming. Simply speaking, there is nothing in the evidence produced by the government that could remotely be said to constitute circumstances that are threatening. The government offered no evidence beyond the possession of the gun while the defendant presumably drove himself to the site to show that there was any act "in furtherance". If the government's position is that possession of the gun alone is enough to warrant detention, that argument is belied by the fact that the statute not only allows rebuttal of the presumption in favor of detention and also by the fact that even with the presumption, the burden of persuasion remains with the government. *Hare* and *Bosquez-Villarreal*, supra. The defendant's father testified that his son was not violent, while the defendant has two arrests (no convictions) for disturbing the peace he does not have an arrest record which suggests violent past behavior and Deputy Ortiz testified that he had no reason to believe that the defendant was dangerous. Under the circumstances, and based on the evidence adduced by the government, the government failed in its burden to prove by clear and convincing evidence that the defendant would constitute a danger if released.

**2. The weight of the evidence against the person**

While not overwhelming, the weight of the evidence on the drug trafficking counts is significant. The weight of the evidence on these counts favors detention. As discussed above, the weight of the evidence presented at this hearing on the firearms count is far from compelling. The weight of the evidence on the firearms count favors rebuttal of the presumption and release.

**3. The history and characteristics of the person**

As set out above the history and characteristics of the person including his long residence and strong family ties favors release.

**4. The nature and seriousness of the danger that would be posed by the person's release**

In the Order setting conditions of release, I set the following conditions, in addition to the standard conditions of release:

1. The defendant sign a $50, 00.00 bond;
2. The bond be secured by both of the defendant's parents as personal sureties;
3. The defendant be placed in the third party custody of both of his parents;
4. The defendant's travel was restricted to the Western District of Louisiana, but is allowed to travel only in the company of at least one of his parents;
5. The defendant is to have no association with any person engaging in any criminal activities;
6. The defendant is to report to the pretrial services office as directed;
7. The defendant is to refrain from possessing a firearm or other dangerous weapon;
8. The defendant is to submit to drug testing as required by the pretrial services office;
9. The defendant is to participate in drug treatment as required by the pretrial services office; and
10. The defendant is to obtain no passport.

The court explained to both of the defendant's parents, in detail, their obligations as third party custodians, and particularly their duty to inform the court in the event that the defendant

violates any of the terms and conditions of the release Order. Both of the defendant's parents, under oath, agreed to serve as third party custodians, said they understood their obligations and further that they understood that to violate their obligations as third party custodians would constitute a violation of my Order. The defendant's parents and the defendant indicated that they understood that if the defendant violated any of the conditions of the release Order that the government could execute on the bond and against the property of the defendant's parents as sureties.

The conditions of release which I set are onerous and are intended to be. These conditions serve to reasonably protect the community as required by the Act. The release of the defendant on these conditions greatly lessen any danger to the community which the defendant's release might otherwise pose. These conditions reasonably assure the appearance of the person and the safety of the community. 18 USC 3142 (g).

On the government's motion, I agreed to stay the release Order I entered until noon on Monday April 7 to allow the government to seek review of the Order.

These constitute my written reasons for denying the government's motion to detain the defendant pending trial.

Lafayette, Louisiana, November 3, 2005.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE